1  ROB BONTA
   Attorney General of California
2  JON S. ALLIN
   Supervising Deputy Attorney General
3  DAVID E. KUCHINSKY
   Deputy Attorney General
4  State Bar No. 292861
     1300 I Street, Suite 125
5    P.O. Box 944255
     Sacramento, CA 94244-2550
6    Telephone: (916) 210-7666
     Fax: (916) 324-5205
7    E-mail: David.Kuchinsky@doj.ca.gov
   *Attorneys for Defendants L. Cupler,*
8  *T. Lewandowski, and R. Johnson*

9                IN THE UNITED STATES DISTRICT COURT

10           FOR THE CENTRAL DISTRICT OF CALIFORNIA

11                     LOS ANGELES DIVISION

12

13

| | |
|---|---|
| **GARY M. GRUBER,** | 2:23-cv-01824-FLA-MAA |
| Plaintiff, | **DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT** |
| v. | |
| **RAY BON JOHNSON, JR. et al.,** | |
| Defendants. | Date:       None Set<br>Time:       None Set<br>Judge:     Hon. Maria A. Audero |

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

Introduction.................................................................................................1

Summary of the Case and Procedural History .........................................2

I.   The Court Dismisses Plaintiff's Complaint for Failure to State a
     Claim as to Cupler, Lewandowski, and Johnson. ...............................2

     A.   Allegations in Plaintiff's Complaint...........................................2

     B.   The Court Finds Plaintiff's Allegations Do Not State a
          Claim Against Cupler, Lewandowski, or Johnson. ...................3

II.  Plaintiff Files a First Amended Complaint Alleging Defendants
     Knew He was on a Level Four Yard Before the Alleged Attack. ........4

Standard for a Motion to Dismiss...............................................................5

Argument .....................................................................................................6

I.   The Failure-to-Protect Claim Should Be Dismissed. ..........................6

     A.   Causation .....................................................................................6

     B.   Standard for Failure-to-Protect Claims ......................................7

          1.   Speculative and Generalized Fear of Future Harm
               Does Not Show a Sufficiently Serious Deprivation.........8

          2.   Prison Officials Must be Subjectively Aware of a
               Serious Risk of Harm. .....................................................8

     C.   Plaintiff's Allegations Fail to Establish the Requisite
          Causative Link Between the Alleged Attack and
          Defendants' Cupler, Lewandowski, and Johnson's
          conduct....................................................................................11

     D.   The Allegations in the FAC Show Nothing More than a
          Speculative and Generalized Fear of Future Harm at the
          Hands of Other Prisoners.........................................................12

II.  Defendants Cupler, Lewandowski, and Johnson Are Entitled to
     Qualified Immunity. ..........................................................................15

     A.   Standard for Qualified Immunity .............................................15

     B.   It Is Not Clearly Established That Housing an Inmate on a
          Yard with Higher Levels of Security, Without More, Is
          Deliberately Indifferent to that Inmate's Safety.....................17

Conclusion .................................................................................................18

# TABLE OF AUTHORITIES

**Page**

CASES

*Anderson v. Creighton*
   483 U.S. 635 (1987) ........................................................................ 15, 17

*Ashcroft v. al-Kidd*
   563 U.S. 731 (2011) ........................................................................ 15, 17

*Ashcroft v. Iqbal*
   556 U.S. 662 (2009) .............................................................................. 5

*Barren v. Harrington*
   152 F.3d 1193 (9th Cir. 1998) ............................................................... 6

*Behrens v. Pelletier*
   516 U.S. 299 (1996) ........................................................................ 15, 16

*Berg v. Kincheloe*
   794 F.2d 457 (9th Cir. 1986) ................................................................ 9

*Davis v. Scherer*
   468 U.S. 183 (1984) ............................................................................ 17

*Dunn v. Castro*
   621 F.3d 1196 (9th Cir. 2010) ............................................................. 16

*Estelle v. Gamble*
   429 U.S. 97 (1976) ............................................................................... 7

*Evans v. Beck*
   No. 1:12–cv–00284, 2012 WL 4747220 (E.D. Cal. 2012) ................................ 11

*Exxon Co., U.S.A. v. Sofec, Inc.*
   517 U.S. 830 (1996) ............................................................................ 11

*Farmer v. Brennan*
   511 U.S. 825 (1994) .................................................................... 7, 8, 9

*Fayle v. Stapley*
   607 F.2d 858 (9th Cir. 1979) ................................................................. 7

# TABLE OF AUTHORITIES
### (continued)

Page

*Flores v. Morgan Hill Unified Sch. Dist.*
  324 F.3d 1130 (9th Cir. 2003) ................................................................ 16

*Gregg v. Georgia*
  428 U.S. 153 (1976) ............................................................................... 7

*Hallett v. Morgan*
  296 F.3d 732 (9th Cir. 2002) .................................................................. 7

*Hansen v. Black*
  885 F.2d 642 (9th Cir. 1989) .................................................................. 6

*Haygood v. Younger*
  769 F.2d 1350 (9th Cir. 1985) (en banc) ............................................... 6

*Hunter v. Bryant*
  502 U.S. 224 (1991) ............................................................................... 15

*Ivey v. Board of Regents of University of Alaska*
  673 F.2d 266 (9th Cir. 1982) .................................................................. 5

*Leer v. Murphy*
  844 F.2d 628 (9th Cir. 1988) .................................................................. 6

*Love v. U.S*
  915 F.2d 1242 (9th Cir. 1989) ................................................................ 5

*Marrero v. Rose*
  No. 1:10–cv–00509, 2013 WL 2991295 (E.D. Cal. 2013) ..................... 11

*Mitchell v. Forsyth*
  472 U.S. 511 (1985) ............................................................................... 15

*Parratt v. Taylor*
  451 U.S. 527 (1981) ............................................................................... 6

*Pearson v. Callahan*
  555 U.S. 223 (2009) ......................................................................... 16, 18

*Preschooler II v. Clark Cty. Sch. Bd. Of Trs.*
  479 F.3d 1175 (9th Cir. 2007.) ............................................................... 6

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Purpura v. Does Members of Inmate Classification Comm.*
    No. 20-CV-1688 JAH (BGS), 2022 WL 2906491 (S.D. Cal. July
    22, 2022) ................................................................................................*passim*

*Rhodes v. Chapman*
    452 U.S. 337 (1988) ........................................................................................ 7

*Saucier v. Katz*
    533 U.S. 194 (2001) ........................................................................... 15, 16, 17

*Snow v. McDaniel*
    681 F.3d 978 (9th Cir. 2012) ........................................................................... 6

*Synder v. Blankenship*
    473 F.Supp 1208 (W.D.Va. 1979)................................................................... 7

*Taylor v. List*
    880 F.2d 1040 (9th Cir. 1989)...................................................................... 6, 7

*Toguchi v. Chung*
    391 F.3d 1051 (9th Cir. 2004) ........................................................................ 7

*Tooker v. Mak*
    No. 20-CV-07373-LHK, 2021 WL 8084335 (N.D. Cal. Mar. 18,
    2021) ................................................................................................................ 8

*Trop v. Dulles*
    356 U.S. 86 (1958) .......................................................................................... 7

*Wilson v. Layne*
    526 U.S. 603 (1999) ...................................................................................... 18

**STATUTES**

United States Code, Title 42
    § 1983 ............................................................................................................... 2

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

**CONSTITUTIONAL PROVISIONS**

United States Constitution
    Fourth Amendment ........................................................................ 17
    Eighth Amendment ................................................................ *passim*

**COURT RULES**

Federal Rule of Civil Procedure
    12(b)(6) ............................................................................... 5

**INTRODUCTION**

The Court dismissed Plaintiff's Eighth Amendment deliberate-indifference claims against Defendants Cupler, Lewandowski, and Johnson, finding Plaintiff's allegations that he was a level-two inmate on a level-four yard and the conclusory statement that level-two inmates should be separated from level-four inmates were insufficient to state a claim.  Plaintiff filed a First Amended Complaint (FAC), again claiming that Defendants Cupler, Lewandowski, and Johnson were deliberately indifferent by allowing him to be housed on a level-four yard, but adding allegations that Defendants were aware that Plaintiff was housed on the level-four yard because Lewandowski and Johnson were present for his initial classification committee meeting, and Cupler and Lewandowski received letters and grievances alerting them that Plaintiff was a level-two inmate housed on a level four-yard before Plaintiff was attacked.

However, these additional allegations do not show that Defendants were subjectively aware of a substantial risk of harm to Plaintiff by housing him on the level-four yard, where according to his own allegations he lived without incident for more than a year.  Plaintiff has failed to articulate what the actionable risk of being housed on the level four-yard was.  Instead, he alleges only a generalized and speculative fear of being incarcerated at a higher security level and the conclusory allegation that level-two inmates should be housed separately from level-four inmates, which is insufficient to show a constitutional violation.  In addition, because there is no consensus of case law that would have put every reasonable official on notice that housing a level-two inmate on a level-four yard was a violation of the Eighth Amendment, Defendants are entitled to qualified immunity. The Court should dismiss the FAC.

/ / /

/ / /

/ / /

## SUMMARY OF THE CASE AND PROCEDURAL HISTORY

**I.    THE COURT DISMISSES PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM AS TO CUPLER, LEWANDOWSKI, AND JOHNSON.**

### A.    Allegations in Plaintiff's Complaint

On March 10, 2023, Plaintiff filed a complaint under 42 U.S.C. § 1983 alleging that the conditions of his confinement at Los Angeles County State Prison (LAC)[1] violated his Eighth Amendment rights.  (Complaint at 1-2, ECF No. 1.)  He claimed he was a level-two inmate who was housed on a level-four yard on January 20, 2020.  (*Id.* at 5.)  He asserted in conclusory fashion that "level 2 inmates should be completely separated at all times and not program with level 4 inmates."  (*Id.*; *see also* Court's Order Dismissing Complaint at 3-4, ECF No. 8 (finding the allegations were "only labels and conclusions, which are insufficient to state a claim.").)  He further alleged that more than a year later, on February 3, 2021, he was attacked by a level-four inmate.  (Complaint at 5, ECF No. 1.)  He explicitly provides the reason he was attacked: "Defendant Eschate on 2-3-21 paid a level 4 inmate to attack and assault the plaintiff when plaintiff was on the phone with his brother."  (*Id.* at 8.)  There were no allegations that Plaintiff had any safety concerns with this inmate before the alleged attack or that Cupler, Lewandowksi, or Johnson had any knowledge that this inmate posed a risk to Plaintiff or had any involvement in the alleged attack.  (*See* Complaint, ECF No. 1.)  Nor did Plaintiff identify any other risk of harm that he was exposed to apart from the general claim the he was housed on a higher-security-level yard.

Plaintiff claimed that as warden of LAC with legal responsibility for the welfare of Plaintiff, Defendant Johnson ignored that Plaintiff was a level-two inmate on a level-four yard and failed to remove Plaintiff from the level-four yard, which resulted in the attack.  (*Id.* at 6.)  Plaintiff claimed as an ombudsman legally

---

[1] California State Prison, Los Angeles County is in Lancaster, California, and is sometimes informally referred to as "Lancaster."

responsible for investigating complaints, Defendant Cupler ignored that Plaintiff was a level-two inmate on a level-four yard "after a number of letter's from Plaintiff and friends of Plaintiff," which resulted in Plaintiff being attacked.  (*Id.*) Plaintiff claimed that as chief deputy warden responsible for responding to grievances, Defendant Lewandowski ignored Plaintiff's grievance, which resulted in Plaintiff being attacked.  (*Id.* at 8.)

### B.   The Court Finds Plaintiff's Allegations Do Not State a Claim Against Cupler, Lewandowski, or Johnson.

On April 18, 2023, the Court dismissed the Complaint at screening, finding "no allegations from which it reasonably could be inferred that any Defendant was aware of and disregarded the risk to Plaintiff's safety."  (Order Dismissing Complaint at 5, ECF No. 5.)  The Court ruled that the allegations against Defendants Cupler, Lewandowski, and Johnson were "only labels and conclusions, which are insufficient to state a claim."  (*Id.* at 3.)  The Court found that the grievance and letters that were submitted were done so *after* the alleged incident on February 3, 2021, and that Defendants slated Plaintiff for transfer to another prison once notified of the incident.  (*Id.* at 4-5.)  The Court held the allegations in the Complaint did not suggest that "these Defendants had the required mental state of 'deliberate indifference' to Plaintiff's health and safety."  (*Id.* at 4.)

The Court explicitly noted that the only factual allegation in the Complaint was "that on February 3, 2021, Defendant Eschate paid a Level 4 inmate to attack and assault Plaintiff when he was on the phone with his brother."  (*Id.* at 3.)  The Court explicitly held that the remaining allegations were conclusory and insufficient to state a claim. (*Id.* at 3-5.)

The Court found that Plaintiff had stated a claim only against Eschate and dismissed the Complaint with leave to amend.  (*Id.* at 5.)

/ / /

/ / /

## II. PLAINTIFF FILES A FIRST AMENDED COMPLAINT ALLEGING DEFENDANTS KNEW HE WAS ON A LEVEL FOUR YARD BEFORE THE ALLEGED ATTACK.

On June 15, 2023, Plaintiff filed a largely identical First Amended Complaint, adding the conclusory statement that "it is literally [Defendants'] job to know" that he was a sex offender with level-two points who was housed on a level-four yard. (FAC at 5, ECF No. 12.)  Plaintiff claims, "The Plaintiff is a sex offender and there is no way that Defendant Johnson, Cupler, and Lewandowski did not know that, 'it is literally their job to know that.'"  (*Id.* at 6.)  He again makes the conclusory claim that level-two inmates should be completely separated from level-four inmates, and adds that inmates are divided into four levels, with four being the most violent.  (*Id.* at 7.)

Plaintiff claims that Defendant Cupler was, "notified by a number of letters that Plaintiff was at risk of serious harm," but does not describe the contents of the letters or what risk of harm to Plaintiff Cupler was made aware of.  (*Id.* at 8.)  He offers the conclusion that "Defendant Cupler was aware long before Plaintiff was attacked and assaulted, but disregarded that a substantial risk of harm existed."  (*Id.*)

Plaintiff claims that Defendant Lewandowski received and ignored a grievance that notified him that Plaintiff was a level-two inmate on a level-four yard. However, he does not describe the contents of the grievance or explain what risk of serious harm existed for Plaintiff that the grievance would have made Lewandowski aware of, other than the fact that Plaintiff was a level-two inmate being housed on a level-four yard.  (*Id.* at 9.)

He again alleges that on February 3, 2021, an officer named Eschate paid an inmate to attack him because he was a sex offender.  (*Id.*)  However, he does not allege that Defendants Cupler, Lewandowski, or Johnson had any involvement, awareness, advanced knowledge, or any reason to know that Eschate would allegedly pay for Plaintiff to be attacked.

1   Lastly, he adds that "Plaintiff went to committee upon arrival at Lancaster
2   State Prison, and Defendants Johnson and Lewandowski where (sic) at that
3   committee because it is CDCR's policy that the warden and chief deputy warden
4   attend each committee." (*Id.* at 10.)
5   On July 6, 2023, the Court ordered service on Defendants Cupler,
6   Lewandowski, Johnson, and Eschate, noting that it had reviewed the FAC and
7   determined it could be served. (Order Directing Service, ECF No. 13.)

8   **STANDARD FOR A MOTION TO DISMISS**

9   In evaluating a complaint that has been challenged under Rule 12(b)(6), the
10   court must accept its allegations as true and construe the facts pled in the light most
11   favorable to the plaintiff. *Love v. U.S*, 915 F.2d 1242, 1245 (9th Cir. 1989).
12   However, the court may not "supply essential elements" of the plaintiff's claim.
13   *Ivey v. Board of Regents of University of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).
14   To survive a motion to dismiss, "a complaint must contain sufficient factual
15   matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"
16   *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atlantic Corp. v. Twombly*,
17   550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff
18   pleads factual content that allows the court to draw the reasonable inference that the
19   defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing
20   *Twombly*, 550 U.S. at 556). This plausibility standard is not a probability
21   requirement, but does ask for more than mere possibility; if a complaint pleads facts
22   "merely consistent with" a theory of liability, it falls short of "the line between
23   possibility and plausibility." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at
24   557).
25   To state a claim under 42 U.S.C. § 1983, a plaintiff must plead sufficient facts
26   to show (1) that a person acting under color of state law engaged in the conduct at
27   issue; and (2) that the conduct deprived the plaintiff of some right, privilege, or
28   immunity protected by the Constitution or laws of the United States. *See* 42 U.S.C.

1  § 1983; *Parratt v. Taylor*, 451 U.S. 527, 535 (1981); *Haygood v. Younger*, 769 F.2d

2  1350, 1354 (9th Cir. 1985) (en banc).

3  **ARGUMENT**

4  **I.    THE FAILURE-TO-PROTECT CLAIM SHOULD BE DISMISSED.**

5      **A.    Causation**

6      "A plaintiff seeking relief under [42 U.S.C. § 1983] must allege facts, not

7  simply conclusions, that show that an individual was personally involved in the

8  deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th

9  Cir. 1998). A plaintiff must show that his alleged deprivation arose from "an

10  affirmative act, participat[ion] in another's affirmative acts, or omits to perform an

11  act which he is legally required to do that *causes* the deprivation of which [the

12  plaintiff complains]. The inquiry into causation must be individualized and focus

13  on the duties and responsibilities of each individual defendant whose acts or

14  omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*,

15  844 F.2d 628, 632-33 (9th Cir. 1988). "In order to resolve this causation issue, we

16  must take a very individualized approach which accounts for the duties, discretion,

17  and means of each defendant." *Id.* at 633. "The requisite causal connection may

18  be established when an official sets in motion a 'series of acts by others which the

19  actor knows or reasonably should know would cause others to inflict' constitutional

20  harms." *Preschooler II v. Clark Cty. Sch. Bd. Of Trs.*, 479 F.3d 1175, 1183 (9th Cir.

21  2007.)

22      Moreover, there is no respondeat superior liability under § 1983. *Taylor v.

23  List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Under Section 1983, supervisory

24  officials are not liable for actions of subordinates on any theory of vicarious

25  liability." *Hansen v. Black*, 885 F.2d 642, 645-646 (9th Cir. 1989). "A supervisor

26  may be liable only if (1) he or she is personally involved in the constitutional

27  deprivation, or (2) there is sufficient causal connection between the supervisor's

28  wrongful conduct and the constitutional violation." *Id.* at 646; *Snow v. McDaniel*,

6

681 F.3d 978, 989 (9th Cir. 2012).  To be liable, supervisors must know of the violations and fail to act to prevent them.  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989.)  "A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Id.*  "When the named defendant holds a supervising position, the causal link between the defendant and the claimed constitutional violation must be specifically established.  *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979).

### B.   Standard for Failure-to-Protect Claims

The Eighth Amendment proscribes the "unnecessary and wanton infliction of pain," which includes any sanction that is "so totally without penological justification that it results in the gratuitous infliction of suffering." *Gregg v. Georgia*, 428 U.S. 153, 173, 183 (1976*); see also Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Rhodes v. Chapman*, 452 U.S. 337, 347 (1988).  This includes any punishment incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Trop v. Dulles*, 356 U.S. 86, 101 (1958); *see also Estelle v. Gamble*, 429 U.S. 97, 102 (1976).  "Only when prison conditions become so deplorable as to fall within the range of subhuman treatment can a federal court intervene." *Synder v. Blankenship*, 473 F.Supp 1208, 1212  (W.D.Va. 1979).

To support an Eighth Amendment failure-to-protect claim, a plaintiff must allege facts showing defendant displayed "deliberate indifference" to an excessive risk to the prisoner's health and safety.  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).  Conduct by a prison official that is negligent or even grossly negligent is insufficient to support such a claim.  *Farmer*, 511 U.S. at 835-36.  "This is not an easy test [] to satisfy." *Hallett v. Morgan*, 296 F.3d 732, 744-45 (9th Cir. 2002).

A plaintiff must alleges facts that show both the objective and subjective elements of a deliberate indifference claim.  *Farmer*, 511 U.S. at 834.

### 1.   Speculative and Generalized Fear of Future Harm Does Not Show a Sufficiently Serious Deprivation.

First, an inmate must show a deprivation that was objectively sufficiently serious resulting in the denial of "the minimal civilized measure of life's necessities."  *Id.* at 834, 837.  "Courts have repeatedly held that a speculative and generalized fear of harm does not rise to a sufficiently substantial risk."  *Tooker v. Mak*, No. 20-CV-07373-LHK, 2021 WL 8084335, at *3 (N.D. Cal. Mar. 18, 2021) (citing *Williams v. Wood*, 223 F. App'x 670, 671 (9th Cir. 2007). *Accord Contreras v. Collins*, 50 F. App'x 351, 352 (9th Cir. 2002) (finding a feared future harm was too "speculative" to "rise to the level of substantial risk that the Eighth Amendment requires."); *see also Arizmendi v. Seman*, No. 13-CV-04716-YGR (PR), 2015 WL 4572430, at *11 (N.D. Cal. July 29, 2015) (finding the "remote and speculative possibility" that a prosecutor would obtain a prisoner's admissions in disciplinary proceedings, and use the admissions in a criminal trial, insufficient to support an Eighth Amendment claim); *Clement v. Gomez*, No. C 97-382 MJJ(PR), 2000 WL 356360, at *3 (N.D. Cal. Mar. 28, 2000) (rejecting Eighth Amendment claim where plaintiff did not "substantiate his speculation" that disciplinary violations might be "later used against him in other prison classification or disciplinary proceedings").)

### 2.   Prison Officials Must be Subjectively Aware of a Serious Risk of Harm.

A plaintiff must also allege facts that show that the prison official defendant knew of, and disregarded, an excessive risk to the prisoner's safety.  *Farmer*, 511 U.S. at 837.  It is not enough to show a defendant should have known of the risk; actual notice on the part of the prison official is required to show deliberate indifference.  *Id.* at 837-38 and 843 n.8.  The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm

exists, and the official must also draw the inference. *Id*. Before being required to take action, the official must have more than a "mere suspicion" that an attack upon an inmate will occur. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986).

Where a plaintiff claims officials should have known of the risk of an inmate attack, the Supreme Court has noted that there would need to be evidence showing that a substantial risk of inmate attacks was "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk." *Farmer*, 511 U.S. at 842-843.

A Southern District of California court recently dismissed a complaint involving a nearly identical set of allegations because the allegations were insufficient to state a claim of deliberate indifference for failure to protect. In *Purpura v. Does Members of Inmate Classification Committee,* the Court found that allegations that a level-two inmate was improperly housed with a level-four inmate and was subsequently attacked, even where it was alleged that the level-four inmate had a known history of violence against inmates and rules violations, were insufficient to state an Eighth Amendment failure to protect claim. *Purpura v. Does Members of Inmate Classification Comm.*, No. 20-CV-1688 JAH (BGS), 2022 WL 2906491, at *1-6 (S.D. Cal. July 22, 2022), *report and recommendation adopted sub nom. Purpura v. Calvert,* No. 3:20-cv-01688-JAH-BGS, 2022 WL 3371342 (S.D. Cal. Aug. 16, 2022).

Purpura alleged that in 2019, he was attacked by a level-four inmate who had been improperly housed on Purpura's level-two yard. *Id.* at *1. He alleged that the defendant prison-official who was the classification committee chair, knew that putting level-two inmates and level-four inmates on the same yard put level-two inmates at severe risk of harm, and that this lead to Purpura being attacked by the

level-four inmate.  *Id.* at *1-2.  Purpura further alleged that the level-four inmate who attacked him had a history of attacking other inmates, which defendant was aware of when he housed the level-four inmate with Purpura.  *Id.* at *1.  The court found that these allegations were insufficient to state a claim, and Purpura filed an amended complaint adding that the defendant had knowledge of the level-four inmate's "tendency to attack and possess weapons and the dangers of putting a Level-4 inmate in a yard with Level-2 inmates." *Id.* at *4.  Purpura also alleged that "putting an inmate known to attack in a yard with inmates known to be substantially less of a threat to other inmates puts those inmates at a substantial risk of harm." *Id.*

The Court found that the allegation that "[d]efendant knew that housing Level 2 inmates with Level 4 inmates put Level 2 inmates at severe risk of harm" was conclusory and unsupported by facts, and was not sufficient to show that the defendant was deliberately indifferent. *Id.*  Acknowledging that Purpura had added the allegation that the defendant was the committee chair and had the final say on inmate housing, the court explicitly held, "Being the chair and having the authority to decide placement does not mean Defendant was both aware of the facts from which the inference could be drawn that a substantial risk of serious harm existed and that Defendant drew the inference.  The Court finds these allegations inadequate to show Defendant was aware of a substantial risk of harm." *Id.* at *5.  And allegations that the level-four inmate had previously been cited for violent conduct against other inmates was "insufficient to show [the level-four inmate] posed a substantial risk of serious harm to inmates like [Purpura] simply by being in the same yard.  Even assuming Defendant did know of the citations and that he placed [the level four inmate] in [Purpura]'s yard, these generalized allegations regarding history do not rise to the level of deliberate indifference." *Id.*

The Court dismissed Purpura's Eighth Amendment claim, finding that "speculative and generalized fears of harm at the hands of other prisoners do not

1  rise to a sufficiently substantial risk of serious harm to future health" and "[t]he

2  possibility of harm is not equivalent to a substantial risk of harm." *Id.* at 5 (citing

3  *Williams v. Wood*, 223 F. App'x 670, 671 (9th Cir. 2007); *Evans v. Beck*, No. 1:12–

4  cv–00284, 2012 WL 4747220, at *3-4 (E.D. Cal. 2012); *Marrero v. Rose*, No.

5  1:10–cv–00509, 2013 WL 2991295, at *6 (E.D. Cal. 2013).

6       While not controlling, *Purpura* correctly ruled that placement of inmates of

7  different security levels on the same yard, without more, does not show a

8  substantial risk of harm.  As discussed below, Plaintiff's claim is nearly identical,

9  as he alleges that his placement on a level-four yard as a level-two inmate, was, in

10  and of itself, deliberately indifferent.  The *Purpura* decision correctly applies the

11  deliberate indifferent standard in finding the same allegations were insufficient to

12  show subjective awareness of a substantial risk of harm.

13      **C.   Plaintiff's Allegations Fail to Establish the Requisite Causative**

14             **Link Between the Alleged Attack and Defendants' Cupler, Lewandowski, and Johnson's conduct.**

15       Apart from the failure to support an Eighth Amendment violation arising from

16  his housing assignment, Plaintiff's own allegations establish that there is no

17  causative link between the actions or inactions of Cupler, Lewandowski, or

18  Johnson, and the alleged attack on Plaintiff.  Plaintiff makes clear, the attack

19  occurred because officer Eschate paid the other inmate to attack Plaintiff.  There are

20  no allegation that Cupler, Lewandowski, or Johnson had any knowledge of

21  Eschate's actions, or any reason to know or advanced warning of the fact that he

22  would allegedly pay an inmate to attack Plaintiff.  There are no allegations by

23  which it can be inferred that Cupler, Lewandowski, or Johnson knew or reasonably

24  should have known that Eschate would pay an inmate to attack Plaintiff.  Plaintiff's

25  allegation that Eschate paid the other inmate is essentially a "superseding

26  intervening cause" as it is "a later cause of independent origin which was not

27  foreseeable." *Exxon Co., U.S.A. v. Sofec, Inc.,* 517 U.S. 830, 837 (1996).

28  Accordingly, the Court should dismiss the FAC because Plaintiff's own allegation

1   of Eschate's conduct is a superseding intervening cause which cannot form a

2   causative link between Defendants' purported decision to allow Plaintiff to be

3   housed on a level-four yard and a correctional officer paying an inmate to attack

4   Plaintiff more than a year later.

> **D.    The Allegations in the FAC Show Nothing More than a Speculative and Generalized Fear of Future Harm at the Hands of Other Prisoners.**

7   Plaintiff alleges that Cupler, Lewandowski, and Johnson knew he was a level-

8   two inmate that was being housed on a level-four yard, but identifies no specific

9   harm that he was at risk of.  Indeed, aside from the conclusory allegation that level-

10   two inmates should be completely separated from level-four inmates, Plaintiff does

11   not identify what the risk of housing a level-two inmate on a level-four yard is.

12   Rather, Plaintiff only vaguely alleges a generalized and speculative fear of the

13   possibility of future harm, which is not sufficient to state an Eighth Amendment

14   failure to protect claim.

15   Plaintiff does not allege that he had any enemies on the yard or was at risk

16   from any particular person, nor does he allege that Defendants were aware of any

17   specific risks other than the mere fact that he was housed on a level-four yard as a

18   level-two inmate.  He was housed on that yard for over a year, and there is no

19   allegation that there were any safety issues, or that Plaintiff alerted Defendants to

20   any safety or security concerns he was having prior to February 2021.  Nor does he

21   claim he had any pre-existing safety concerns with the inmate who attacked him, or

22   with any other inmate on the yard, and he does not allege he alerted any staff

23   member to any safety concerns he had with that inmate.  Instead, he explains that

24   the reason for the attack was that an officer paid the inmate to do it, which could

25   have occurred on any yard, regardless of designation or security level.  Again, there

26   are no allegations that Cupler, Lewandowski, or Johnson had any knowledge of

27   Eschate's purported actions, or any reason to know or advanced warning of the fact

28   that he would allegedly pay an inmate to attack Plaintiff.

1    Plaintiff's claim against Cupler, Lewandowski, and Johnson thus must rely on

2  the proposition that housing level-two inmates on level-four yards is, in and of

3  itself, an Eighth Amendment violation, despite the lack of any specific threat or

4  particular risk.  However, this conclusion is contradicted by the alleged timeline of

5  events, as Plaintiff was housed on the level-four yard for more than a year without

6  any purported incidents or any indication that he notified Defendants of a specific

7  risk of harm.  Plaintiff's generalized and speculative fears of future harm from

8  being housed on a level four-yard are insufficient to support the inference that there

9  even was a substantial risk to Plaintiff's health or safety, still less that any

10 Defendant was actually aware of and deliberately disregarded it.  Indeed, this Court

11 has previously dismissed these allegations, finding that they were conclusory and

12 unsupported.

13    Nor do any of the newly alleged facts in the FAC make such a showing.

14 Plaintiff alleges that Defendant Cupler knew Plaintiff was on the level-four yard

15 and thus was at serious risk of harm because he was "notified by a number of

16 letter's (sic) that Plaintiff was at risk of serious harm" which purportedly were sent

17 "long before Plaintiff was attacked and assaulted."  (FAC at 8.)  However, these are

18 merely conclusory statements without factual allegations to support them.  There is

19 no indication of the date the letters were sent, what the contents of the letters were,

20 what "risk of serious harm" was identified, or any basis to find that Cupler read the

21 letters and understood them to show Plaintiff was at risk of harm.  Certainly, there

22 are no allegations that could suggest that Cupler knew Plaintiff was at risk of being

23 attacked by the inmate who attacked him, and indeed the accusation that Eschate

24 paid the inmate to attack Plaintiff affirmatively rules out such an inference.

25 Plaintiff's conclusory claim that a letter made Cupler aware that Plaintiff was at

26 substantial risk of being harmed fails to explain how the letter made Cupler aware,

27 or even what specific facts the letter made Cupler aware of.  This conclusory

28 allegation is insufficient to establish subjective awareness of a substantial risk of

harm.  Nor does Plaintiff allege facts that establish any sort of nexus between Cupler's alleged conduct and "Eschate" paying the level four inmate to attack Plaintiff.

Plaintiff's newly added allegations that Defendant Lewandowski disregarded a grievance that notified him that Plaintiff was a sex offender with level-two points on a level-four yard suffers from the same conclusory nature.  Plaintiff provides no factual allegations regarding the timing or substance of the grievance and no indication that any specific risk of harm was identified beyond the general claim that Plaintiff was housed on a level-four yard.  Again, as noted above in *Purpura,* the allegation that housing a level-two inmate with a level-four inmate puts the level-two inmate at substantial risk of harm is conclusory and unsupported by the mere fact of the housing assignment.

Similarly, Lewandowski and Johnson's alleged presence at the initial classification committee and the authority to decide to house Plaintiff on a level-four yard, is not sufficient, by itself, to state a claim.  "Being the chair and having the authority to decide placement does not mean Defendant was both aware of the facts from which the inference could be drawn that a substantial risk of serious harm existed and that Defendant drew the inference.  The Court finds these allegations inadequate to show Defendant was aware of a substantial risk of harm." *Purpura,* 2022 WL 2906491 at *5.  There is no allegation that Lewandowski or Johnson knew of any safety risk to Plaintiff or any concerns on that yard, or that they even had a suspicion that Plaintiff would be harmed if housed on a level-four yard.  Rather, Plaintiff asserts only a general principle that level-2 inmates should be separated from level-4 inmates.

These allegations are insufficient to state a claim against any Defendant because Plaintiff does not allege any facts suggesting that Defendants were subjectively aware of a substantial risk to Plaintiff's health or safety.  Instead, Plaintiff alleges only speculative and generalized fear of future harm because he

1  was being housed on a level-four yard, which does not show the requisite mental
2  state of Defendants, and has been previously rejected by this Court, especially
3  where there is no evidence of any safety concerns or issues for more than a year
4  after Plaintiff was placed on the yard.  Because this is insufficient as a matter of
5  law, Plaintiff's Eighth Amendment failure-to-protect claim should be dismissed.

6  **II.  DEFENDANTS CUPLER, LEWANDOWSKI, AND JOHNSON ARE ENTITLED
   TO QUALIFIED IMMUNITY.**
7
8      **A.   Standard for Qualified Immunity**

9      Qualified immunity entitles government officials to "*an immunity from suit*
10 rather than a mere defense to liability; and like an absolute immunity, it is
11 effectively lost if a case is erroneously permitted to go to trial."  *Mitchell v.*
12 *Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original).  Qualified immunity
13 "'shield[s] [government agents] from liability for civil damages insofar as their
14 conduct does not violate clearly established statutory or constitutional rights of
15 which a reasonable person would have known.'"  *Behrens v. Pelletier*, 516 U.S.
16 299, 305 (1996) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "The
17 general rule of qualified immunity is intended to provide government officials with
18 the ability 'reasonably [to] anticipate when their conduct may give rise to liability
19 for damages.'"  *Anderson v. Creighton*, 483 U.S. 635, 646 (1987) (citing *Davis v.*
20 *Scherer*, 468 U.S. 183, 195 (1984)).  Generally, the qualified immunity doctrine
21 must "'give[ ] ample room for mistaken judgments' by protecting 'all but the
22 plainly incompetent or those who knowingly violate the law.'"  *Hunter v. Bryant*,
23 502 U.S. 224, 229 (1991).  "Qualified immunity gives government officials
24 breathing room to make reasonable but mistaken judgments about open legal
25 questions."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).

26     A ruling on a qualified immunity claim should be made "at the earliest
27 possible stage in litigation" "so that the costs and expenses of trial are avoided
28 where the defense is dispositive."  *Saucier v. Katz*, 533 U.S. 194, 200-201 (2001),

*modified by Pearson v. Callahan*, 555 U.S. 223, 231-36 (2009) (holding that the order of *Saucier's* two-step qualified immunity inquiry should not be regarded as an inflexible requirement) (citation omitted).  Qualified immunity confers upon officials "a right, not merely to avoid 'standing trial,' but also to avoid the burdens of 'such pretrial matters as discovery.'"  *Behrens*, 516 U.S. at 308 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

In analyzing a claim of qualified immunity, one inquiry, though not necessarily the first, is whether a constitutional right was violated on the facts alleged.  *Saucier*, 533 U.S. at 201; *Pearson*, 555 U.S. at 231-36.  "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."  *Saucier,* 533 U.S. at 201.

Assuming a constitutional violation, the question remains whether the right was clearly established.  "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, *not as a broad general proposition* . . . ."  *Id.* (emphasis added).  This prong of the *Saucier* analysis is "'solely a question of law for the judge,' . . .  Therefore, . . . it is proper for [the Court] to reach the inquiry into whether the facts as alleged supported a reasonable officer's belief that his conduct was lawful."  *Dunn v. Castro*, 621 F.3d 1196, 1199 (9th Cir. 2010) (citations omitted).  The court must "determine whether the preexisting law provided the defendants with 'fair warning' that their conduct was unlawful."  *Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130, 1137 (9th Cir. 2003) (quoting *Hope v. Pelzer*, 536 U.S. 730, 740 (2002)).  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the specific factual situation he confronted."  *Saucier*, 533 U.S. at 202 (citing *Wilson v. Layne*, 526 U.S. 603, 615 (1999)).

But clearly establishing a *general proposition* is not enough.  Rather, "'. . .

16

the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense:  The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"  *Id.* (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  If the right is defined too generally, "[p]laintiffs would be able to convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Anderson,* 483 U.S. at 639-40.  The Supreme Court has "repeatedly told courts— and the Ninth Circuit in particular—not to define clearly established law at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. at 742.  The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established." *Id.*  Although a case directly on point is not required, "existing precedent must have placed the statutory or constitutional question beyond debate"—i.e. "absent controlling authority" there must be "a robust 'consensus of cases of persuasive authority.'" *Id.* at 741.  Neither a general proposition, nor dictum in a footnote is adequate.  *Id.*  Plaintiff bears the burden of proving the law was clearly established.  *Davis v. Scherer*, 468 U.S. 183, 197 (1984).

> **B.  It Is Not Clearly Established That Housing an Inmate on a Yard with Higher Levels of Security, Without More, Is Deliberately Indifferent to that Inmate's Safety.**

As discussed above, the allegation that Cupler, Lewandowski, and Johnson knew he was a level-two inmate on a level-four yard and failed to remove him does not establish a constitutional violation.  (FAC at 5-10.)  Plaintiff does not identify any substantial risk to his safety that Defendants were aware of, and his allegations establish that he was housed on a level-four yard for more than a year before any incidents arose.  There are no allegations that Plaintiff had any known enemy or safety concerns on the yard, or that he had experienced any problems with this or any other inmate prior to the February 2021 incident.  Similarly, there are no

allegations that Defendants had any involvement or advanced knowledge of "Eschate" paying an inmate to attack Plaintiff or any reason to foresee that this would occur.  There are no allegations to suggest that there was any risk to Plaintiff apart from the conclusory allegation that merely housing a level-two inmate on a level-four yard is, itself, deliberately indifferent, and thus, Defendants are entitled to qualified immunity on that ground.

In addition, there is no persuasive consensus of case law that would have made it known to every reasonable prison official in Defendants' positions that housing a level-two inmate on a level-four yard, without any other indication of safety or security concerns, amounts to a constitutional violation.  Indeed, as discussed above, the court in this circuit rejected exactly such a claim, finding the allegations did not state a claim, even where the Defendants knew about the violent history of the inmate committing an attack.  *Purpura*, 2022 WL 2906491.  Instead, the case law indicates that speculative and generalized fears of future harm are insufficient to state such a claim.   A right cannot be clearly established when conflicting decisions exist.  *Pearson v. Callahan*, 555 U.S. 223, 244-45 (2009); *Wilson v. Layne*, 526 U.S. 603, 618 (1999) ("If judges thus disagree on a constitutional question, it is unfair to subject [public officials] to money damages for picking the losing side of the controversy.").

Accordingly, because it would not have been clear to every reasonable prison official in Defendants' position that housing Plaintiff on a level four yard, without any indication of specific risks of harm, would violate Plaintiff's Eighth Amendment rights, Defendants are entitled to qualified immunity.

## CONCLUSION

Plaintiff's First Amended Complaint fails to state a deliberate indifference claim against Defendants Cupler, Lewandowski, or Johnson, as there are no facts from which the inference can be drawn that Defendants' conduct caused a deprivation or that Defendants' were subjectively aware of a substantial risk of

harm to Plaintiff.  Plaintiff alleges he was a level two inmate housed on a level four yard, but does not identify any particular risk of harm that Defendants were aware of.  Instead, he bases his claim on the mere fact that he was a level two inmate housed on a level four yard, but case law makes clear this is insufficient to state a claim.  In addition, the purported harm was allegedly caused by an unserved correctional officer paying an inmate to attack Plaintiff, rather than any action or conduct by Defendants.  Moreover, Defendants are entitled to qualified immunity because it is not clearly established that housing an inmate on a higher-security level yard, without more, is deliberately indifferent.  Accordingly, Defendants respectfully request that the Court dismiss the FAC.

Dated:  December 11, 2023                    Respectfully submitted,

                                             ROB BONTA
                                             Attorney General of California
                                             JON S. ALLIN
                                             Supervising Deputy Attorney General


                                             **/s/ David E. Kuchinsky**



                                             DAVID E. KUCHINSKY
                                             Deputy Attorney General
                                             *Attorneys for Defendants L. Cupler,*
                                             *T. Lewandowski, and R. Johnson*

SA2023305424
37726945.docx

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants, certifies that this brief contains 6343 words, which complies with the word limit of L.R. 11-6.1.

Dated:  December 11, 2023

Respectfully submitted,

ROB BONTA
Attorney General of California

**/s/ David E. Kuchinsky**

DAVID E. KUCHINSKY
Deputy Attorney General
*Attorneys for Defendants L. Cupler, T. Lewandowski, and Raybon Johnson*